18 A.3d 100

**Edy SANCHEZ**

v.

**POTOMAC ABATEMENT, INC., et al.**

Nos. 569, Sept. Term, 2009, 504, Sept. Term, 2010.

Court of Special Appeals of Maryland.

April 27, 2011.

438

Harvey Greenberg, Townson, MD, for appellant.

Richard W. Scheiner (Julie M. Dietrick, Semmes, Bowen, Semmes, on the brief), Baltimore, MD, for appellee.

Panel: ZARNOCH, GRAEFF and LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

ZARNOCH, J.

If not totally moot, this case raises one of the most difficult issues of statutory construction: the possible conflict between two related, but separately enacted and arguably self-contained statutes, each of which is singularly relied upon by the contending parties. In attempting to construe and harmonize these two statutes, we find it difficult to accept the assumption that the Legislature in amending one of these laws considered its relationship to the other. When you factor into the equation a judicial gloss on one of the provisions and Code revision changes and subsequent amendments to the other suggestive of a change in meaning, you are left with a recipe for confusion resulting in the question presented in these consolidated appeals of decisions of the Circuit Court for Baltimore County.

That question is whether a negative implication said to arise from one of the above statutes deprives the Workers' Compensation Commission ("the Commission") of jurisdiction to consider benefit issues involving a claimant while he is challenging a previous award in court. To use the appellant's terms (and to meld his two assertions into one), the issue is:

Whether the Commission and Circuit Court have jurisdiction to order vocational rehabilitation benefits or a close-ended period of temporary total disability benefits ("TTD") subsequent to and pending an appeal of the Commission's Order in the same claim awarding permanent partial disability benefits ("PPD").

A second issue we must raise *sua sponte* is:

Whether these appeals are now moot because appellant's judicial challenge to the PPD award has concluded.

## FACTS AND PROCEEDINGS

On September 22, 1998, appellant Edy Sanchez suffered a job-related injury. Seeking compensation from his employer, appellee Potomac Abatement, Inc. ("Potomac"), Sanchez filed

a claim with the Workers' Compensation Commission. In August 2006, the Commission issued an award that included compensation for a 25 percent PPD and a 5 percent psychiatric impairment to be paid beginning on January 14, 2000.

Contending that the computation of the award was incorrectly capped, Sanchez filed suit in the Circuit Court for Baltimore County. Eventually in 2008, a jury determined that the claimant had sustained a 37 percent PPD with no award for psychiatric impairment. Sanchez appealed the issue of whether the award had been improperly capped and this contention was rejected by this Court in 2009, *Sanchez v. Potomac Abatement, Inc.*, 184 Md.App. 755 (2009), and later by the Court of Appeals in November of 2010 in *Sanchez v. Potomac Abatement, Inc.*, 417 Md. 76, 8 A.3d 737 (2010).

On January 28, 2008, while the PPD appeal was pending, Sanchez sought and obtained a Commission award of a closed period of TTD benefits for the period of November 30, 2007 to January 8, 2008. On July 31, 2008, he filed for a second closed period of TTD benefits for the period of January 9, 2008 to June 11, 2008. The employer opposed this claim, arguing that the Commission had no jurisdiction to order TTD benefits during the pendency of the appeal of the PPD case. In an order dated October 21, 2008, Commissioner Jeffrey T. Weinberg agreed, noting: "The Commission finds on the issue presented that the Commission lack[s] jurisdiction during the pendency of appeal pursuant to LE 9–742."[1] Without com-

---

1. Md.Code (1991, 2008 Repl.Vol.) Labor and Employment Article (LE), § 9–742 provides:

> (a) The Commission retains jurisdiction pending an appeal to consider:
> (1) a request for additional medical treatment and attention; and
> (2) a request for temporary total disability benefits, provided that the covered employee's temporary total disability benefits were granted in the order on appeal, and were terminated by the insurer or self-insurer pending adjudication or resolution of the appeal.
> (b)(1) If the Commission finds that a covered employee needs additional medical attention pending an appeal, the Commission may pass a supplemental order requiring the employer to provide additional medical treatment and attention.

ment, the Commissioner rejected Sanchez's reliance on case-law recognizing the Commission's continuing jurisdiction under what is now LE § 9–736.[2] Sanchez sought judicial review

---

(2) If the Commission finds that a covered employee's temporary total disability benefits were terminated pending adjudication or resolution of the appeal, and that the employee was temporarily totally disabled at the time of termination, the Commission may pass a supplemental order requiring the employer to provide the employee with temporary total disability benefits.

(3) If the Commission's decision to reinstate temporary total disability benefits is reversed or modified on appeal, the insurer or self-insurer shall be entitled to an offset or credit for overpayment of the temporary total disability benefits granted in the supplemental order.

(c) A supplemental order passed by the Commission under this section is subject to review on the pending appeal.

(d)When an appeal that is pending relates solely to a penalty imposed by the Commission, the Commission retains jurisdiction over all matters in the case other than imposition of the penalty.

(e)This section may not be construed to prevent the Commission from ordering an offset or credit against an award for temporary total or permanent partial disability benefits for any temporary total disability benefits previously paid to a covered employee, as authorized under any other provision of this title.

2. Section 9–736 states:

If aggravation, diminution, or termination of disability takes place or is discovered after the rate of compensation is set or compensation is terminated, the Commission, on the application of any party in interest or on its own motion, may:

(1) readjust for future application the rate of compensation; or

(2) if appropriate, terminate the payments.

(b)(1) *The Commission has continuing powers and jurisdiction over each claim under this title.*

*(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.*

*(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the latter of:*

*(i) the date of the accident;*

*(ii) the date of disablement; or*

*(iii) the last compensation payment.*

(c)(1) If it is established that a party failed to file an application for modification of an award because of fraud or facts and circumstances amounting to an estoppel, the party shall apply for modification of an award within 1 year after:

(i) the date of discovery of the fraud; or

(ii) the date when the facts and circumstances amounting to an estoppel ceased to operate.

of the Commission's order in the Circuit Court for Baltimore County, which affirmed the Commission's decision in an order dated May 8, 2009 and filed May 21, 2009. Specifically, the circuit court stated:

> Section 9–742 of that Article provides the Commission two instances in which it retains jurisdiction pending an appeal. Of importance is § 9–742(a)(2), which allows the Commission to consider a request "for temporary total benefits, provided that the covered employee's temporary total disability benefits were granted in the order on appeal, and were terminated by the insurer or self-insurer pending adjudication or resolution of the appeal." In the instant case, Petitioner was awarded permanent partial disability, not temporary total disability, in the award currently on appeal. Therefore, the Commission does not retain jurisdiction to consider his additional issue stemming from the same incident on appeal.

On May 26, Sanchez appealed this decision.

While the TTD case and the PPD appeal were in the courts, Sanchez, on August 19, 2009, again revisited the Commission, this time seeking vocational rehabilitation benefits. After an October 27, 2009 hearing, Commissioner Kimberly Smith Ward, on November 3, 2009, ruled: "The Commission finds that it does not have jurisdiction during pendency of appeal." Sanchez sought judicial review of this order, once again in the Circuit Court for Baltimore County, and once again without success. In an order dated April 22, 2010 and filed April 29, 2010, the circuit court said:

> Section 9–742(a)(1) and (2) of that Article provides two instances in which the Commission retains jurisdiction pending an appeal. Plaintiff/Appellant's counsel advanced no argument that his client's request for vocational rehabilitation would be covered by the wording of either § 9–742(a)(1)

---

(2) Failure to file an application for modification in accordance with paragraph (1) of this subsection bars modification under this title.
(Emphasis added).

or (2). Further, this Court is not persuaded by the argument of Plaintiff/Appellant's counsel that § 9–742(a)(1) and (2) are only exemplars of instances when the Commission retains jurisdiction and is not a specific limitation by the Maryland State Legislature on the jurisdiction of the Commission.

This decision was appealed on May 26, 2010. In an August 3, 2010 order, this Court consolidated the vocational rehabilitation appeal with the TTD appeal.

## DISCUSSION

### 1. Mootness

██ The first issue we must address is whether Sanchez's appeals are now moot because the obstacle perceived by the Commission to its jurisdiction—the PPD appeal—has been removed.

██ The test for mootness is "whether, when it is before the court, a case presents a controversy between the parties for which, by way of resolution, the court can fashion an effective remedy." *Adkins v. State,* 324 Md. 641, 646, 598 A.2d 194 (1991). One exception to the mootness doctrine is where a controversy that becomes non-existent at the moment of judicial review is capable of repetition but evading review. *State v. Parker,* 334 Md. 576, 584, 640 A.2d 1104 (1994).[3] Another judicial gloss on the mootness doctrine allows us to express our views on the merits of a moot case to prevent harm to the public interest.[4]

---

3. Generally, this exception is applicable only when (1) the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again. *Parker,* 334 Md. at 585, 640 A.2d 1104.

4. In *Lloyd v. Bd. of Supervisors of Elections,* 206 Md. 36, 43, 111 A.2d 379 (1954), the Court of Appeals said that this authority arises in cases where:

> the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest ... If the public

In light of these tenets, we believe that, absent an appropriate exception, this case is moot. The only effective remedy this Court could fashion—ordering the Commission to consider the claimant's post-PPD claims—is one Sanchez now has an unfettered right to pursue.

■ The "capable of repetition but evading review" exception to the mootness doctrine is not clearly applicable in this case. Although here, the "pending appeal" was decided before the two subsequent Commission jurisdictional cases could be resolved, this does not mean that such issues would invariably escape review. For example, in *Ewing v. Koppers Company, Inc.*, 69 Md.App. 722, 519 A.2d 790 (1987), the question of additional compensation reached the appellate courts *before* the primary appeal had concluded. *Id.* at 725, 519 A.2d 790. In addition, there is no clear expectation that "the same complaining party," *i.e.* Sanchez, will be requesting additional compensation (beyond that already claimed), seeking judicial review and facing harm from the Commission's interpretation of LE § 9–742. *Parker*, 334 Md. at 584, 640 A.2d 1104. For these reasons, we believe that the "capable of repetition but evading review" exception does not save this controversy from becoming moot.

■ However, in our view, this case implicates the "public interest" offshoot to the mootness doctrine.[5] Sanchez raises significant issues involving the proper interpretation of important social legislation that bears not only on future claimants'

---

interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight.

5. We describe the principle recognized in *Lloyd* and subsequent cases, *see* n. 4, *supra,* as an "offshoot" rather than an "exception" to the mootness doctrine, because it does not prevent dismissal of the appeal on mootness grounds. *See Cottman v. State,* 395 Md. 729, 745, 912 A.2d 620 (2006).

rights to prompt compensation for their injuries, but also on the efficient operation of both the Commission and the courts. Thus, we believe the public interest would be served by an expression of our views for the guidance of courts, litigants, and the Commission.

## 2. A Tale of Two Statutes

██ We now turn to the question of the Commission's jurisdiction over additional compensation issues while the primary claim is on judicial review. This is an issue of statutory construction, which Sanchez says is controlled by LE § 9–736(b) and Potomac contends is governed by LE § 9–742(a). Both the Commission and the circuit courts viewed § 9–742(a) as a self-contained agency jurisdictional statute and presumably applied the maxim, *expressio unius est exclusio alterius.* Hence, they arrived at a negative implication that the Legislature, by expressly setting forth the instances in § 9–742(a) where the Commission retained jurisdiction while a claim was on appeal, intended no other exception.[6] While this maxim may under appropriate circumstances be a powerful tool in

---

6. One expert on Maryland workers' compensation practice has noted that when a claimant seeks judicial review, "the Commission may lose jurisdiction to hear other issues that have greater importance to the appellant" and that "the author's experience is that the Commission is reluctant to retain jurisdiction when the case is on appeal except for the matters discussed in [LE § 9–742]." Clifford B. Sobin, *Maryland Workers' Compensation* (2010–2011 Edit.2010), at § 22.1 and § 22.7. Sobin also suggests a number of routes to prevent the loss of Commission jurisdiction:

   [T]he forgiving nature of Maryland's Workers' Compensation statute will often allow another opportunity to claim the same or similar type of benefit:
   1) by brute force per the continuing powers and jurisdiction of the Commission (requesting modification pursuant to the discretionary revisory powers granted the Commission in Lab. Empl. § 9–736);
   2) by nuance (requesting a rehearing based on Lab. Empl. § 9–726) due to error of law or newly discovered evidence;
   3) by changing the benefits claimed (vocational benefits instead of temporary total disability or one form of medical treatment instead of the denied form); or
   4) by a change in circumstances (deteriorating medical condition requiring treatment previously denied).
   *Id.* at § 22.1.

statutory construction, *see Whaley v. State,* 186 Md.App. 429, 444–47, 974 A.2d 951 (2009), the Court of Appeals has said that this canon "is not a rule of law" but merely an "auxiliary" rule of statutory construction to assist in determining legislative intent in an ambiguous statute. *Walzer v. Osborne,* 395 Md. 563, 579, 911 A.2d 427 (2006) (citations and quotations omitted). It should be used "with caution" and should "never be applied to override the manifest intention of the Legislature." *Id.*

Rather than rigidly apply the *expressio unius* maxim to one statute when two are arguably in play, we believe the ambiguity inherent in these interrelated provisions directs us to fully consider the legislative history of these enactments.

Present at the Commission's creation, *see* Chapter 800, *Laws of 1914,* § 9–736(b) is the older of the two statutes.[7] While subsequent legislative changes moved this provision around the workers' compensation law and placed temporal limits on the modification of an award, the basic language of the statute has remained unchanged for more than half a century, until it was examined by the Court of Appeals in *Pressman v. State Accident Fund,* 246 Md. 406, 228 A.2d 443 (1967). There, the Court made two significant interpretations that touch on the issues in this case. First, it held that this jurisdictional provision could apply even when a claim had already been appealed. *Id.* at 415–16, 228 A.2d 443. Second, the Court imposed a limitation on the Commission's retention of jurisdiction under § 9–736(b), when judicial review was sought on the primary claim, holding that the Commission retained jurisdiction only with respect to matters "independent and distinct from the issues on appeal." *Id.* at 416, 228

---

7. Section 53 of the 1914 enactment provided in its entirety: "The powers and jurisdiction of the Commission over each case shall be continuing and it may from time to time make such modifications or changes with respect to former findings or orders with respect thereto as in its opinion may be justified." The use of the word "case" in the statute suggests a broad scope to the retention of jurisdiction. By 1957, this language was no longer found in a free-standing provision, but was linked with other subsections. *See* Chapter 814, *Laws of 1957.*

A.2d 443. Although this language did not appear in the General Assembly's enactment, the Court's limitation on Commission jurisdiction reflected a reasonable attempt to reconcile the agency's statutory authority with provisions authorizing judicial review of Commission action.

Eventually, a 1991 Code revision included this provision in LE § 9–736 as subsection (b)—according to its Revisor's Note—"without substantive change." Chapter 8, *Laws of 1991*.[8] Except for amendments in 1969 (Chapter 116) and 200 (Chapter 568) to what is now § 9–736(b)(3), and a nonsubstantive revision in 1957 (Chapter 814), the remainder of subsection (b) looks much like it did in 1914.

Section 9–742 is of more recent vintage. It was enacted in 1966 to require the Commission to consider a claimant's request for additional medical treatment and attention pending any appeal he or she may have taken. *See* Chapter 298, *Laws of 1966*. It was neither a free-standing nor an obvious exclusive jurisdiction statute. Rather, the legislation consisted of a single sentence and a single clause planted within a jungle of provisions dealing with appeals from Commission decisions.[9]

---

**8.** Notably, the word "case" was replaced with "claim" and the phrase "in its opinion" was deleted. *Compare* footnotes 2 and 4, *supra*. The caption to § 9–736 read: "**Readjustment; continuing powers and jurisdiction; modification.**"

**9.** Chapter 298 amended § 56(a) of old Article 101 to provide:

Any employer, employee, beneficiary or person feeling aggrieved by any decision of the Commission affecting his interests under this article, may have the same reviewed by a proceeding in the nature of an appeal and initiated in the circuit court of the county or in the common law courts of Baltimore City having jurisdiction over the place where the accident occurred or over the person appealing from such decision, and the court shall determine whether the Commission has justly considered all the facts concerning the injury, whether it has exceeded the powers granted it by the article, and whether it has misconstrued the law and facts applicable in the case decided. In the event that an appeal shall be taken to a court other than the circuit court of the county or to a common law court of Baltimore City having jurisdiction over the place where the accident occurred or over the person appealing from such decision, the court shall on

This "additional medical treatment and attention" language was transformed by the 1991 revision of the LE Article into an apparently self-contained provision:

### § 9–742. Jurisdiction of Commission pending appeal.

(a) *In general.*—The Commission retains jurisdiction pending an appeal to consider a request for additional medical treatment and attention.

(b) *Supplemental order.*—If the Commission finds that a covered employee needs additional medical attention pending an appeal, the Commission may pass a supplemental

---

motion of either party transfer such appeal to the proper tribunal, so that the said appeal may be heard on its merits in the court having jurisdiction to hear the same. If the court shall determine that the Commission has acted within its powers and has correctly construed the law and facts, the decision of the Commission shall be confirmed; otherwise it shall be reversed or modified. Upon the hearing of such an appeal the court shall, upon motion of either party filed with the clerk of the court according to the practice in civil cases, submit to a jury any question of fact involved in such case provided, however, that in all appeals in which occupational diseases are involved, the findings of fact by the Commission shall be final and not subject to review or modification by the court or be submitted to a jury. The proceedings in every such an appeal shall be informal and summary, but full opportunity to be heard shall be had before judgment is pronounced. *In the event a claimant needs additional medical attention pending any appeal as provided herein, the Commission shall retain jurisdiction to entertain a request for additional medical treatment and attention and may issue a supplemental order requiring the employer to furnish additional medical treatment and attention, which order is subject to review on the pending appeal.* An appeal shall not be a stay of any order of the Commission directing payment of compensation or *any order or supplemental order requiring* the furnishing of medical treatment. If the decision of the Commission shall be confirmed, reversed or modified, the practice prevailing in civil cases as to the payment of costs and fees of medical and other witnesses shall apply. In all such appeals upon suggestion in writing, under oath, of either of the parties to said proceedings that such party cannot have a fair and impartial trial in the court in which the same may be pending, the said court shall order and direct the record of proceedings in such appeal to be transmitted to some other of the circuit courts of the counties, or common law courts of Baltimore City for trial. Appeal shall lie from the judgment of the circuit court of the county or the common law courts of Baltimore City to the Court of Appeals as in other civil cases. All appeals from the Commission shall have precedence over all cases except criminal cases. (italics in original.)

order requiring the employer to provide additional medical treatment and attention.

(c) *Review on pending appeal.*—A supplemental order passed by the Commission under this section is subject to review on the pending appeal.

The Revisor's Note to the section indicated that it was "new language derived without substantive change from the ninth sentence of former Art. 101, § 56(a)." Nevertheless, the appearance of the statute had dramatically altered. Despite the absence of language of exclusivity, § 9–742 seemed to look a little more like a candidate for the *expressio unius* canon. Although § 9–736(b) also dealt with Commission jurisdiction pending appeal, § 9–742 appeared to become the "go-to" provision for drafting legislation on the Commission's retained jurisdiction.

In 1997, the Legislature added subsection (d), to direct the Commission to retain jurisdiction when a pending appeal related solely to the imposition of a penalty. Chapter 641, *Laws of 1997.* The Fiscal Note to the legislation (HB 63), after describing the purpose of the measure, observed: "Under current law the commission retains jurisdiction pending an appeal *only* to consider a request for additional medical treatment and attention." (Emphasis added). Three years later, § 9–742(a) was amended to add certain claims regarding TTD benefits to what was now beginning to look like a list of retained jurisdiction scenarios. Chapter 398, *Laws of 2000.* Once again, the Fiscal Note for the bill (HB 612), said: "The employee does not receive benefits pending outcome of the appeal. The commission retains jurisdiction pending an appeal *only* to consider a request for additional medical treatment and attention for those already awarded benefits." [10] (Emphasis added). And most recently, in the last session of the General Assembly, the Legislature in identical bills added to § 9–742(a) a paragraph (3) providing for retained Commis-

---

**10.** No mention was made of the 1997 legislation. Neither this Fiscal Note nor the 1997 note on HB 63 mentions the Commission's authority under LE § 9–736(b).

sion jurisdiction for "a request for approval of a proposed settlement of all or part of a claim." Chapter 45 and Chapter 46, *Laws of 2011.*

It would seem the case for reading § 9–742 as an exclusive jurisdiction statute, implicitly barring the retention of Commission jurisdiction in cases not specifically listed, relies on: 1) the structure of the provision; 2) the caption of the section; 3) subsequent amendments to the original 1966 statute suggesting that agency jurisdiction was retained only in the listed cases; 4) comments in two Fiscal Notes to that effect. In our view, none of these factors reflect an intent to make the 1966 statute (or transform it into) an exclusive jurisdiction statute.

First, whether or not form follows function is, as some suggest, a mantra for all seasons,[11] the reverse of that principle can hardly be a dependable rule of statutory construction. The mere isolation or rearrangement of words in a statute, particularly as a result of a nonsubstantive code revision, cannot substantively alter its meaning.

Second, a caption to a section of the law, particularly one inserted by the Legislature during a nonsubstantive code revision, should never be the determining factor in deciphering legislative intent. *See* Md.Code (1957, 2008 Repl.Vol.), Article 1, § 18 (Captions are "mere catchwords," not titles of sections); Section 13 of chapter 8, *Laws of 1991* (Catchlines in the LE Article "are not law and may not be construed to have been enacted as a part of this Act.").

Third, while examining subsequent amendments to a statute can be helpful in determining legislative intent, they are "not controlling" as to the meaning of the prior law. *Chesek v. Jones,* 406 Md. 446, 462, 959 A.2d 795 (2008). The same is true with respect to post-enactment "assumptions" by the Legislature of the meaning of an earlier statute. *See Riemer v. Columbia Med. Plan, Inc.,* 358 Md. 222, 254, 747 A.2d 677

---

11. This principle was coined by architect Louis Sullivan. *See* Sullivan, *The Tall Office Building Artistically Considered,* Lippincott's Magazine (March 1896).

(2000) ("If [in a later statute] the Legislature assumed [that] a right [to subrogation] existed for HMOs, its assumption was an erroneous one.").

Fourth, a fleeting reference to the state of existing law in a fiscal note would not be entitled to greater weight than the assumptions of the Legislature in subsequent amendments. In addition, one of these notes did not fully describe the scope of jurisdiction under § 9–742, *see* n. 10, *supra,* and neither mentioned § 9–736(b).[12]

In summary, we note that: the 1966 source law for § 9–742 was never truly an exclusive jurisdiction statute; nothing in its code revision or subsequent amendments changed this fact; and the meaning of § 9–736(b) was neither modified nor controlled by § 9–742. The latter provision's express retention of Commission jurisdiction in the face of an appeal to the courts does not mean that such authority is absent under § 9–736(b).

Our work is not done by simply concluding that § 9–742 does not deprive the Commission of jurisdiction while a previous award is on appeal, and that the agency retains jurisdiction if the new claim is properly authorized under § 9–736(b). It is this Court's duty to harmonize the two related provisions. At least two possibilities occur to us: 1) retained jurisdiction is mandatory under § 9–742, but discretionary under § 9–736(b) [13]; and 2) jurisdiction is retained under § 9–736(b) only if the matter is independent and distinct from the issues on

---

**12.** If § 9–736(b) and § 9–742 had been included in the same provision or cross-referenced, rather than being isolated in separate sections, the older statute might not have been overlooked. *See Price v. Upper Chesapeake Health Ventures, Inc.,* 192 Md.App. 695, 708, 995 A.2d 1054 (2010) ("Perhaps, the former provision would not have been overlooked by the parties if a cross-reference to the section had been included....")

**13.** Language in the pre-code revision version of these statutes tends to suggest such a distinction. *See* n. 7–9, and n. 6, *supra.* We do not mean to suggest that to the extent authority under § 9–736(b) is discretionary, such discretion is unfettered. *Cf. Spencer v. Maryland State Board of Pharmacy,* 380 Md. 515, 531, 846 A.2d 341 (2004).

appeal, while such a condition is not imposed on jurisdiction retained under § 9–742.

Because we have disposed of the question of exclusive jurisdiction under § 9–742, which was the sole basis for the decisions below, and because the Commission now clearly has jurisdiction of the new issues, we need not determine whether under *Pressman* it would have been proper for the Commission to retain jurisdiction over these specific claims under § 9–736(b).

**APPEAL DISMISSED AS MOOT. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

